IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| RALPH GAUDINO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case Action No. 18-cv-00930-TJK |
| SECURITAS SECURITY SERVICES | : | |
| USA, INC., et al. | : | |
| | : | |
| Defendants | : | |

_____

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANT SECURITAS SECURITY
SERVICES USA, INC.'S MOTION FOR PHYSICAL EXAMINATION**

COMES NOW the Plaintiff, Ralph Gaudino, by and through his counsel, and hereby

partially opposes Defendant Securitas Security Services USA, Inc.'s ("Securitas'") Motion for

Physical Examination.

Plaintiff is amenable in principle to submitting to a psychiatric examination by Keyhill

Sheorn, MD.  However, Plaintiff has rightfully insisted to Securitas that the conduct of the

examination be independently verified through video-recording.  In this case arising out of a

frightening and traumatic assault, video-recording is in the best interests of Mr. Gaudino's

mental health, because an objective record will prevent him from feeling that he has been

misrepresented and therefore re-victimized by the defense (and, relatedly, an objective record

will ensure that the events of the psychiatric examination are portrayed accurately to the jury).

Video-recording will also enable a **more** accurate assessment of Mr. Gaudino's wellbeing, as he

is more likely to feel at ease if there is monitoring of his examination by a psychiatrist serving an

adversarial role.  Dr. Sheorn's objections to video-recording are out of place, as she erroneously

assumes that she is treating Mr. Gaudino in a clinical setting, rather than evaluating him in a forensic setting.

Furthermore, Plaintiff objects that the Court should not order Mr. Gaudino to submit to the unspecified and unexplained "current symptoms questionnaire" and "standard mental status exam" without identifying what these tests are, so that Plaintiff and the Court may evaluate their propriety.

Plaintiff explains further, as follows:

1.  This case arises out of an incident that occurred on February 11, 2017, in which security guards employed by Defendant Securitas Security Services USA, Inc. witnessed, and yet failed to prevent, Defendant Mark Baker's illegal entry into the premises of Mr. Gaudino's workplace. Once inside, Mr. Baker, who was high on drugs, erratic, screaming, and naked, assaulted Mr. Gaudino.  Since February 24, 2017, Mr. Gaudino has treated with psychiatrist David L. Gardner, M.D., who has diagnosed Mr. Gaudino with ongoing Post-Traumatic Stress Disorder and Acute Distress Disorder caused by the attack.  The Declaration of Dr. Gardner is attached hereto as *Exhibit A*.

2.  Securitas has requested that Mr. Gaudino submit to a psychiatric examination to be conducted by Dr. Sheorn.  Plaintiff does not oppose this request in principle, but maintains that the examination should be video-recorded (at Plaintiff's expense).  Securitas declined this condition, and thus filed its Motion.

3.  Whether to order a medical examination pursuant to Rule 35 lies within the Court's discretion. *Benham v. Rice*, 238 F.R.D. 15, 28 (D.D.C. 2006) (citing *Smith v. Koplan*, 215 F.R.D. 11, 12 (D.D.C. 2003).  The Court should only order an examination if the mental or physical condition of a party is in controversy, and the movant shows good cause for an

examination. *See Schlagenhauf v. Holder*, 379 U.S. 104, 117-18 (1964).  Good cause requires a showing beyond the mere relevance of a medical examination; the movant must also demonstrate the necessity of an examination, in light of the imposition upon the plaintiff.  *See id.* Furthermore, subsection (a)(2)(B) of Rule 35 directs that if the Court does order a medical examination, in doing so the Court "must specify the . . . manner, conditions, and scope of the examination."

4.   This Court has previously ruled that video-recording of a Rule 35 examination is generally not permitted except upon a showing of specific need.  *See Meixing Ren v. Phoenix Satellite TV (US), Inc.*, 309 F.R.D. 34, 35 n.1, 36 (D.D.C. 2015) (citing *Convertino v. U.S. DOJ*, 660 F. Supp. 2d 8, 11 (D.D.C. 2009) (permitting video-recording of examination upon request of examiner); *Doe v. District of Columbia*, No. 03-cv-1789, 2005 U.S. Dist. LEXIS 44874 (D.D.C. Aug. 15, 2005) (permitting video-recording of examination of ten-year old alleged sexual abuse victim)).

5.   In an attempt to preempt Plaintiff's request to videotape the psychiatric examination, Securitas attaches to its Motion two signed statements by Dr. Sheorn.  One, undated, sets forth Dr. Sheorn's self-imposed "policy" against video-recording of any psychiatric evaluation of a personal injury claimant.[1]  In the other, dated February 3, 2020, Dr. Sheorn explains her purported rationale for her "policy."

6.   Dr. Sheorn states in her February 3 statement that Mr. Gaudino is generally competent, but that is not at issue.

7.   More significantly, in her February 3 statement, Dr. Sheorn proceeds to object that video-recording will interfere with her proposed "**clinical** exam" (emphasis added) of Mr. Gaudino.

---

[1] Dr. Sheorn refers to the undated statement as an "affidavit," but the statement is unsworn.

8.   In response, Mr. Gaudino's treating psychiatrist, Dr. Gardner, notes in his attached Declaration that the American Academy of Psychiatry and the Law ("AAPL") does not object in general to the use of video-recording in **forensic** evaluations, and actually contemplates the use of video-recording. *See Exhibit A* at ¶¶ 12-14.  To similar effect, the American Bar Association ("ABA") actually favors the use of video-recording in the case of adversarial, forensic mental health examinations, at least in the context of criminal procedure. *See Exhibit A* at ¶ 15.

9.   Furthermore, it is worth quoting at length Dr. Gardner's rebuttal of Dr. Sheorn's rationale for her "policy" against video-recording in this case:

> **17. Dr. Sheorn's explanation for her "policy" mistakes a forensic examination for a clinical examination.**  In her February 3 statement, Dr. Sheorn repeatedly refers to the evaluation as "clinical" in nature, and frames the anticipated examination as if Mr. Gaudino is her patient and it is being conducted for his benefit (Dr. Sheorn expresses her concern that video-recording would "deprive Mr. Gaudino of an accurate assessment of his pathology and to make the best recommenda-tions [*sic*] for any future need he may have").  However, this is all erroneous, because Dr. Sheorn will not medically treat Mr. Gaudino, nor will she have a physician-patient relationship with him.  Dr. Sheorn has only been retained to perform a forensic evaluation of Mr. Gaudino's condition for litigation purposes.  Dr. Sheorn's failure to recognize this fundamental principle calls her position into question.
>
> 18. In her February 3 statement, Dr. Sheorn expresses her concern that in the presence of a video-recorder Mr. Gaudino will be "distracted" and will "perform" rather than act as he naturally would, "genuine" and "spontane[ous]," *i.e.*, unguarded.   To similar effect, in her undated statement, Dr. Sheorn asserts that video-recording will "diminish or malign" the claimant's trust toward him.  These concerns might be valid in the clinical setting of a physician-patient relationship characterized by mutual trust, but are plainly out of place in a forensic setting.  A claimant, with an already compromised psychiatric well-being, who is being evaluated for litigation purposes by a psychiatrist who is hired by the lawyer for the company he is suing, can reasonably be expected to believe that there will not be a fair assessment made by the defense-hired psychiatrist.  Dr. Sheorn's expectation that Mr. Gaudino would "be able to talk to [her] in the same manner that he is able to talk with his attorney" (expressed in her February 3 statement) is obviously unrealistic and misguided.

*Exhibit A* (emphasis in original).  Thus, Securitas's opposition to video-recording is based upon Dr. Sheorn's misunderstanding of the nature of the examination she is to conduct.

10. Moreover, Dr. Gardner explains why video-recording is beneficial for multiple reasons: to protect Mr. Gaudino's psychological well-being, to make him more comfortable at the examination and therefore more candid, and to ensure that Plaintiff has a fair opportunity to rebut Dr. Sheorn's conclusions at trial.  Again, it is worth quoting from the Declaration at length:

> 19.    [I]f anything, video-recording mitigates or eliminates the distrust of the defense-hired psychiatrist.  The claimant can be confident a complete record will be made, for evaluation by the parties, as to what was said and done during the evaluation.

> 20.    Furthermore, a forensic psychiatric evaluation will by necessity include subjective impressions of content and process.  Dr. Sheorn herself drives this point home in her February 3 statement, where she notes the significance of the "subtilties [*sic*] of the non-verbal portion of the evaluation," *i.e.*, Dr. Sheorn is likely to render her opinion partly based upon her impressions of Mr. Gaudino's facial expressions and body language.  After the examination, there will be no reasonable ability to challenge Dr. Sheorn's subjective impressions, except through an objective recording of the evaluation.

> 21.    If a claimant disagrees with the factual assertions made by the expert (what allegedly was said by the claimant) or the subjective assertions (what the claimant allegedly did: his demeanor or how he comported himself), this will likely have a negative impact on a claimant's progress toward resolution of his symptomology.  He will likely feel that he has been assaulted again, and that his opportunity to obtain justice is thwarted.  **This will likely alienate the claimant and impede his recovery.  This is especially true with respect to Ralph Gaudino.**

> 22.    Transparency of forensic evaluation in litigation settings eliminates the problem and the potential of harm to the medical well-being of the claimant. There is no professional standard prohibiting the recording of a forensic evaluation.

> **23.    In my opinion, as noted above, video-recording of the forensic psychiatric evaluation would be in the best interests of my patient, Ralph Gaudino.**

*Exhibit A* (emphasis added).

11. In sum, according to Mr. Gaudino's own treating psychiatrist, video-recording is in

the **best interests of the mental health of Mr. Gaudino**, whose psychological well-being is at stake in this case.  It will also enable Mr. Gaudino to be more candid, and therefore promote the accuracy of the examination.  Finally, it will promote fairness in the litigation, as it will give the jury the opportunity to itself view the behavior and demeanor of Mr. Gaudino at the examination, rather than compel the jury to rely upon the defense expert's impressions.

12. Conversely, **Dr. Sheorn has not identified any disadvantages** of video-recording, as her opposition is premised upon a misunderstanding of the sort of examination she is to perform.  Dr. Sheorn is to perform a forensic rather than clinical examination, and her opinion on video-recording is not consistent with the positions of AAPL or the ABA in the context of forensic examinations.

13. The instant case is distinguishable from the ruling in *Meixing Ren*, 309 F.R.D. at 36, on the issue of video-recording.  There, the court declined to allow the plaintiffs' attorney to be present at their psychiatric examinations, because the plaintiffs' rationales (that the examinations would "re-traumatize" the plaintiffs, and that the plaintiffs would suffer language and cultural impediments in communicating with the examiner) applied just as much to the examinations by plaintiffs' own experts, which had not been observed.  There is no indication that the plaintiffs in *Meixing Ren* raised the issue of how any dispute between the plaintiffs and the examiner might affect the plaintiffs' mental health.  But that is the issue raised here, and it establishes a specific need to video-record the anticipated forensic examination by Dr. Sheorn, which does not apply to Mr. Gaudino's past treatment with Dr. Gardner.

14. Also distinguishable are two cases cited by Securitas, *Miles v. UDC*, Civ. Act. No.

6

12-378, 2014 U.S. Dist. LEXIS 72295 (D.D.C. May 2, 2014), and *Abdulwali v. WMATA*, 193 F.R.D. 10 (D.D.C. 2000). In each case the plaintiff, who sought to video-record his or her mental health examination, did not file an expert affidavit in support of the request, and did not contend that recording was necessary to protect his or her own mental health.

15. Although Plaintiff has made a showing of specific need for video-recording, even without such a showing the Court should grant Plaintiff's request. The Court of Appeals for the District of Columbia Circuit has not ruled that such a showing is required, and without such a showing other federal courts have across the country have permitted plaintiffs to electronically record, and/or bring observers to, their own Rule 35 medical examinations. *See, e.g.*, *Kuslick v. Roszczewski*, Case No. 09-12307-BC, 2012 U.S. Dist. LEXIS 35720, at *13-15 (E.D. Mich. Mar. 16, 2012) (permitting plaintiff to electronically record psychological examination); *Tracey P. v. Sarasota County*, Case No. 8:05-CV-927-T-27EAJ, 2006 U.S. Dist. LEXIS 40013, at *12 (M.D. Fla. June 16, 2006) (permitting plaintiff to bring court reporter to, or audio-record, psychiatric examination); *Vreeland v. Ethan Allen, Inc.*, 151 F.R.D. 551 (S.D.N.Y. 1993) (permitting plaintiff to bring counsel to psychological examination); *Zabkowicz v. W. Bend Co.*, 585 F. Supp. 635 (E.D. Wisc. 1984) (permitting plaintiff to electronically record, or bring observer such as counsel, to psychiatric examination). *Kuslick* and *Zabkowicz* in particular hold that independent verification through the presence of an observer or recording device is best practice at a medical examination, because the examiner is not truly a neutral party, having been retained and paid by the defense for the defense's purposes.

16. Finally, Plaintiff notes a separate objection that he has to the examination as

proposed by Securitas: The Motion is the first time that Securitas has raised the prospect that

Dr. Sheorn would include in the examination a "current symptoms questionnaire" and "end

with a standard mental status exam." Plaintiff does not know what these proposed tests are,

nor can Dr. Gardner tell what they are from this vague statement. *See Exhibit A* at ¶ 24.

Especially in light of Rule 35(a)(2)(B), which provides that any Order for an examination

must specify the "manner, conditions, and scope of the examination," before any Order for

an examination issues, Securitas must first describe with greater particularity what these

tests are, so that Plaintiff and the Court can evaluate their propriety, and Plaintiff must have

an opportunity to respond to the specific proposal. *See Meixing Ren*, 309 F.R.D. at 37-38

(where defense proposed to conduct psychiatric evaluation of plaintiffs consisting of

"interview of each subject and . . . only those tests that are necessary" to ascertain the

existence and/or extent of any emotional distress, held that defense needed to better explain

the examination being proposed, and that plaintiff should have an opportunity to respond,

before any order issued).

      WHEREFORE, Plaintiff Ralph Gaudino respectfully requests that the Court enter an

Order consistent with the foregoing.

      Respectfully submitted,

      **CHAIKIN, SHERMAN, CAMMARATA**
      **& SIEGEL, P.C.**

      */s/ Joseph Cammarata*
      Joseph Cammarata, Esquire
      D.C. Bar #389254
      1232 17th Street, N.W.
      Washington, D.C. 20036
      (202) 659-8600
      Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February, 2020, a copy of the foregoing Plaintiff's Partial Opposition to Defendant Securitas Security Services USA, Inc.'s Motion for Rule 35 Examination, was served via PACER upon:

James W. Walker, Esq.
O'Hagan Meyer LLP
411 East Franklin Street
Suite 500
Richmond, VA 23219
jwalker@ohaganmeyer.com

Kristin Leigh McGough, Esq.
Law Office of Kristin L. McGough
400 Fifth Street, NW
Suite 350
Washington, DC 20001
kristin@kmcgoughlaw.com

/s/ Joseph Cammarata
Joseph Cammarata

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA
Civil Division

RALPH GAUDINO,             :
                       :
      Plaintiff,      :
                       :
      v.                :
                       : Case No. 18-cv-00930-TJK
SECURITAS SECURITY SERVICES  :
USA, INC., et al.             
                       :
      Defendants.     :
_____ :

## DECLARATION OF DAVID L. GARDNER, M.D.

I, David L. Gardner, M.D., hereby depose and state as
follows:

### I. Introduction

1.    My name is David L. Gardner, M.D.  I am engaged in the
private practice of psychiatry in the District of Columbia.  All
of the opinions expressed in this Declaration are stated to a
reasonable degree of medical certainty.

2.    I am aware that Ralph Gaudino is the Plaintiff in a
lawsuit against a security company, in which he claims he was
assaulted by an intruder at his workplace after security
officers' actions permitted the intruder to enter the workplace.
I am further aware that the security company seeks to have Mr.
Gaudino undergo a forensic psychiatric evaluation by Keyhill
Sheorn, M.D., hired by the security company.



PLAINTIFF'S
EXHIBIT
A

3.    It is my understanding that Mr. Gaudino, through his lawyer, seeks to have the evaluation video-recorded. I have reviewed Dr. Sheorn's signed, undated statement setting forth her "policy for disallowing a witness of any type to attend [her] evaluation of claimants," and that a psychiatric evaluation "may not be witnessed, recorded, taped, or otherwise interfered with as any intrusion will alter and jeopardize the accuracy of the exam." Dr. Sheorn further states that "[w]hen the request is made for the evaluation to be intruded upon, trust in the examiner is already diminished or maligned. This does not give the claimant a fair opportunity to present his or her story . . . ." I have also reviewed Dr. Sheorn's attached signed statement dated February 3, 2020, in which she explains her purported rationale behind her "policy."

4.    Dr. Sheorn's "policy" is not required by any ethical or professional mandate governing the conduct of forensic psychiatric evaluations. I am aware of no ethical or professional psychiatric rule, policy, or guidelines precluding the video-recording of a forensic psychiatric evaluation.

## II. **My Professional Background**

5.    I earned a Bachelor of Arts in psychiatry, with distinction, from the University of Virginia in 1973. I obtained my Doctor of Medicine from Virginia Commonwealth University in

2

1977, and did my residency in psychiatry at Georgetown University Hospital from 1977-1981.

6.    I have been in private practice of psychiatry since 1981, continuously licensed without interruption in the District of Columbia.

7.    Since 1981, I have been a Clinical Assistant Professor of Psychiatry with the Department of Psychiatry at Georgetown University Hospital.

8.    Further, I have been board-certified by the American Board of Psychiatry and Neurology since 1983.

9.    My curriculum vitae is attached as Exhibit A.

### III. **My Treatment of Ralph Gaudino**

10.    I have been treating Ralph Gaudino since February 24, 2017, for Acute Stress Disorder and Post-Traumatic Stress Disorder arising out of the incident which gave rise to the lawsuit noted above.

11.    While Mr. Gaudino has made progress in his treatment, he remains under my care with active consultation and medication management.

### IV. **Video-Recording of a Forensic Psychiatric Evaluation is Completely Permissible, Ethical, and Advantageous**

12.    The American Academy of Psychiatry and the Law ("AAPL") has published the AAPL Practical Guide for the Forensic Assessment (the "AAPL Practice Guideline") to offer guidance for

psychiatrists in the performance of forensic evaluations and "reflects a consensus among members and experts about the principles and practices applicable to the conduct of forensic assessments." See, p. S3 of the AAPL Practice Guidelines, attached as Exhibit B (only relevant portions attached).

13.   The AAPL Practice Guidelines noted that a task force of the AAPL on video-recording "concluded that recording is an acceptable but not a mandatory procedure" and that the AAPL task force determined that video-recording is ethical.   Exhibit B, p. S13.

14.   Furthermore, the AAPL Practice Guidelines states that:

> After the expert obtains informed consent for the assessment, the evaluee should be given an opportunity to ask questions regarding the process. If there are unanticipated questions, such as a request to make an audio- or video-recording of the examination or to have a third party present during the assessment, the examiner should consider contacting the retaining attorney with this new information before proceeding. In general, if an evaluee is seeking to record the interview, the examiner should do the same and retain a recording of the session.

Exhibit B, p. S7.

15.   With respect to the value of recording to protect the interests of individuals being evaluated in adversarial matters, the American Bar Association's ("ABA") *2016 Criminal Justice Standards on Mental Health* addresses the importance of

4

documenting evaluations through video recording. *Standard 7-3.5. Procedures for conducting evaluations* provides:

> (d) recording the evaluation
>
> (ii) Whenever feasible, recordings should be made of all court-ordered evaluations of defendants initiated by the prosecution or the court. Copies of such recordings should be provided promptly to the defense attorney and the prosecution.
>
> (iii) Jails and other correctional facilities should maintain equipment that evaluators may use to make audio and video recordings of evaluations they conduct in such facilities. The equipment should be available, on request of the evaluator, for use in a private room when feasible and consistent with security requirements. Alternatively, facilities should allow evaluators to use their own equipment.
>
> (iv) If an evaluation is recorded, *video recording should be considered preferable to audio recording*. (Italics added)

16.   Dr. Sheorn's self-imposed "policy" is not governing in this matter.  Rather, this "policy" is only her preference as to how she wants to conduct her evaluation.  As noted above, video-recording of a forensic examination is permissible, ethical, and offers a significant advantage to the process in an adversarial legal setting.

17.   **Dr. Sheorn's explanation for her "policy" mistakes a forensic examination for a clinical examination.**  In her February 3 statement, Dr. Sheorn repeatedly refers to the evaluation as "clinical" in nature, and frames the anticipated examination as if Mr. Gaudino is her patient and it is being

conducted for his benefit (Dr. Sheorn expresses her concern that
video-recording would "deprive Mr. Gaudino of an accurate
assessment of his pathology and to make the best recommenda-tions
[*sic*] for any future need he may have"). However, this is all
erroneous, because Dr. Sheorn will not medically treat Mr.
Gaudino, nor will she have a physician-patient relationship with
him. Dr. Sheorn has only been retained to perform a forensic
evaluation of Mr. Gaudino's condition for litigation purposes.
Dr. Sheorn's failure to recognize this fundamental principle
calls her position into question.

18. In her February 3 statement, Dr. Sheorn expresses her
concern that in the presence of a video-recorder Mr. Gaudino will
be "distracted" and will "perform" rather than act as he
naturally would, "genuine" and "spontane[ous]," i.e., unguarded.
To similar effect, in her undated statement, Dr. Sheorn asserts
that
video-recording will "diminish or malign" the claimant's trust
toward her. These concerns might be valid in the clinical
setting of a physician-patient relationship characterized by
mutual trust, but are plainly out of place in a forensic setting.
A claimant, with an already compromised psychiatric well-being,
who is being evaluated for litigation purposes by a psychiatrist
who is hired by the lawyer for the company he is suing, can
reasonably be expected to believe that there will not be a fair

6

assessment made by the defense-hired psychiatrist.  Dr. Sheorn's expectation that Mr. Gaudino would "be able to talk to [her] in the same manner that he is able to talk with his attorney" (expressed in her February 3 statement) is obviously unrealistic and misguided.

19.  That said, if anything, video-recording mitigates or eliminates the distrust of the defense-hired psychiatrist.  The claimant can be confident a complete record will be made, for evaluation by the parties, as to what was said and done during the evaluation.

20.  Furthermore, a forensic psychiatric evaluation will by necessity include subjective impressions of content and process. Dr. Sheorn herself drives this point home in her February 3 statement, where she notes the significance of the "subtilties [sic] of the non-verbal portion of the evaluation," i.e., Dr. Sheorn is likely to render her opinion partly based upon her impressions of Mr. Gaudino's facial expressions and body language.  After the examination, there will be no reasonable ability to challenge Dr. Sheorn's subjective impressions, except through an objective recording of the evaluation.

21.  If a claimant disagrees with the factual assertions made by the expert (what allegedly was said by the claimant) or the subjective assertions (what the claimant allegedly did: his demeanor or how he comported himself), this will likely have a

7

negative impact on a claimant's progress toward resolution of his symptomology. He will likely feel that he has been assaulted again, and that his opportunity to obtain justice is thwarted. This will likely alienate the claimant and impede his recovery. This is especially true with respect to Ralph Gaudino.

22.   Transparency of forensic evaluation in litigation settings eliminates the problem and the potential of harm to the medical well-being of the claimant. There is no professional standard prohibiting the recording of a forensic evaluation.

23.   In my opinion, as noted above, video-recording of the forensic psychiatric evaluation would be in the best interests of my patient, Ralph Gaudino.

24.   Furthermore, I note that in her February 3 statement, Dr. Sheorn states that she intends to administer "a current symptoms questionnaire . . . and then end with a standard mental status exam." The contents of the questionnaire and exam that Dr. Sheorn intends to give are not explained, and I cannot evaluate the propriety of these requests without specific identification of these tests.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on: _____February 17, 2020_____

_____David L. Gardner, M.D._____
David L. Gardner, M.D.

9